**COUNTY LINE INVESTMENT COMPA-NY and, Wagco Land Development, Inc., Plaintiffs–Appellants,**

**v.**

**Calvin L. TINNEY, Defendant–Appellee.**

Nos. 89–5118, 89–5119.

United States Court of Appeals, Tenth Circuit.

May 24, 1991.

Oliver S. Howard, Dennis C. Cameron, of Gable & Gotwals, and David A. Carpenter, Tulsa, Okl., for plaintiffs-appellants.

Charles W. Shipley, Blake K. Champlin, and Leslie C. Rinn, of Shipley & Schneider, Tulsa, Okl., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and MOORE and BRORBY, Circuit Judges.

PER CURIAM.

These appeals arise out of the closure of a sanitary landfill in Wagoner County, Oklahoma.[1] The district court granted summary judgment against County Line Investment Company (County Line) and Wagco Land Development, Inc. (Wagco), two current and former landfill owners, in their attempt to recover investigation and closure costs from Calvin L. Tinney, another former landfill owner, under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (1988), and a claim based on the state common law theory of unjust enrichment. *County Line Investment Co. v. Tinney*, 30 ERC 1062, 1989 WL 237380 (N.D.Okla.1989). Wagco and

---

1. Upon joint motion of the parties, these appeals were ordered submitted on the briefs.

County Line timely appealed the district court's judgment. We affirm.[2]

## Background

In February 1978, defendant-appellee Tinney leased property he owned in Wagoner County, Oklahoma to Donald and Norma Tulk for use as a sanitary landfill. The Tulks operated the landfill, known as D & N Landfill, on this property from 1978 until approximately November 1983. During this period, they allegedly permitted waste containing hazardous substances to be placed on the property.

In March 1982, plaintiff-appellant County Line purchased the property containing the D & N Landfill from Tinney. Sometime later, the Tulks began closure activities at the site as required by regulations of the Oklahoma State Department of Health (OSDH) and in cooperation with the OSDH.[3] In early 1984, however, the Tulks abandoned the Landfill before completing closure. County Line was aware of the Tulks' activities and their abandonment of the site and was in communication with OSDH regarding the site during this period. County Line did not complete closure of the Landfill.

In June 1985, County Line conveyed the property encompassing the D & N Landfill to plaintiff-appellant Wagco, another subsidiary of County Line's parent company. In February 1986, Wagco received notice from the U.S. Environmental Protection Agency (EPA) that hazardous substances possibly were being released from the Landfill. Wagco responded in the spring and summer of 1986 by conducting a magnetometer/metal detector survey of the site to locate any hazardous waste drums buried there and by digging and sampling one or more trenches in the areas showing the highest metals concentrations. These efforts were overseen by an EPA contrac-

tor. EPA subsequently decided not to take any action at the site.

In November 1986, representatives of Wagco and County Line (collectively "New Owners") met with EPA and OSDH officials to discuss the results of Wagco's investigations. At this meeting, Wagco agreed to undertake a formal closure of the Landfill pursuant to OSDH rules and regulations for sanitary landfills. Wagco contacted Tinney in February 1987 and requested his input and financial participation in developing and implementing the closure and post-closure plan. Tinney refused. Shortly thereafter, Wagco submitted a closure/post-closure plan to the OSDH.[4] OSDH accepted the plan, which the New Owners implemented and completed by June 1987. The New Owners' total cost for investigating and closing the Landfill exceeded $360,000.

The New Owners brought this action against Tinney in June 1988. In it, they sought reimbursement for their costs in investigating and closing the Landfill under three theories. First, they alleged that Tinney, as a former owner of the Landfill at a time when hazardous substances were being disposed of there, was jointly and severally liable for these costs under the private cost recovery provisions of CERCLA section 107, 42 U.S.C. § 9607. This section provides, as relevant to this action, that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... any ... necessary costs of response incurred by any other person consistent with the national contingency plan." *Id.* § 9607(a). In a second claim, the New Owners alleged that they were entitled to contribution from Tinney under CERCLA section 113(f)(3)(B), *id.* § 9613(f)(3)(B), which provides that:

---

**2.** Tinney's Objection to Amended Transcript Designation and Motion to Strike Portions of Appellants' Opening Brief is denied.

**3.** These closure activities consisted of covering portions of the landfill and attempting to establish vegetation over the fill.

**4.** This plan proposed contouring of the site surface to create a leachate control system, impoundment of all surface water at the site, establishment of final native vegetative cover, installation of gas vents, construction of a groundwater monitoring system and implementation of a post-closure monitoring program.

A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement [with the United States or a State].

*Id.* Finally, the New Owners asserted an unjust enrichment claim against Tinney under Oklahoma law.

After extensive discovery, Tinney filed a motion for summary judgment as to each of the New Owners' three claims. The district court granted this motion and entered judgment for Tinney on June 30, 1989.

## Discussion

The New Owners challenge the district court's entry of summary judgment on each of its three claims. We review the district court's decision on each claim *de novo* under the standard prescribed by Federal Rule of Civil Procedure 52(c). *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990). We will affirm the district court's grant of summary judgment on each only if we find "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Abercrombie,* 896 F.2d at 1230. The party moving for summary judgment has the initial burden of identifying for the trial court the absence of genuine issues of fact, but once this burden is satisfied, summary judgment is mandated if the nonmovant fails to come forward with specific evidence demonstrating a triable issue of fact as to each essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A. Private cost recovery under CERCLA section 107

The district court entered summary judgment on the New Owners' section 107 claim upon finding that the undisputed evidence established that their costs in investigating and closing the Landfill were not incurred "consistent with the national contingency plan." The national contingency plan (NCP) is a set of regulations promulgated by EPA that "establish[es] procedures and standards for responding to releases of hazardous substances." 42 U.S.C. § 9605; *see* 40 C.F.R. Part 300 (1988). The version of the NCP in effect during the New Owners' investigation and closure of the Landfill[5] stated that:

(a)(1) Any person may undertake a response action to reduce or eliminate the release or threat of release of hazardous substances, or pollutants or contaminants. Section 107 of CERCLA authorizes persons to recover certain response costs consistent with this Plan from responsible parties.

(2) For purposes of cost recovery under section 107 ... a response action will be consistent with the NCP ... if the person taking the response action:

. . . . .

(ii) Where the action is a remedial action:

(A) Provides for appropriate site investigation and analysis of remedial alternatives as required under § 300.68;

(B) Complies with the provisions of paragraphs (e) through (i) of § 300.68 [establishing standards and procedures for choosing a site remedy];

(C) Selects a cost-effective response; and

(D) Provides an opportunity for appropriate public comment concerning the selection of a remedial action consistent with paragraph (d) of § 300.67 [requiring a study outlining alternative remedial measures to be provided to the public for at least a twenty-one day

---

**5.** This version of the NCP, which became effective in 1985, *see* 50 Fed.Reg. 47,951 (codified at 40 C.F.R. Part 300 (1988)) [hereinafter 1985 NCP], was revised pursuant to final regulations issued March 8, 1990, effective April 9, 1990. 55 Fed.Reg. 8666 (1990) [hereinafter 1990 NCP].

review and comment period] unless compliance with ... State and local requirements ... provides a substantially equivalent opportunity for public involvement in the choice of remedy. 1985 NCP, 40 C.F.R. § 300.71 (1988).

The New Owners admitted in the summary judgment proceedings below that their investigation and closure of the Landfill constituted a "remedial action" [6] under the Plan. The district court therefore measured the consistency of their actions against the site investigation, remedy selection, cost-effectiveness and public participation standards and procedures stated for remedial actions in section 300.71(a)(2)(ii) of the 1985 NCP, the NCP in effect at the time the New Owners incurred the costs it now seeks to recover. It found the New Owners' investigation and closure of the Landfill wanting in each of these four areas and hence ordered summary judgment entered against the New Owners on their CERCLA cost recovery claim.

■ The New Owners first challenge the district court's implicit holding that proof of consistency with the NCP is an element of a prima facie claim to recover private party response costs [7] under CERCLA section 107.[8] Instead, the New Owners argue, this requirement is only a measure of the damages recoverable under that provision. In so arguing, the New Owners misapprehend the decision below.

The question addressed by the district court was not "how much" damage had plaintiffs suffered, but rather, whether the type of damages alleged was remediable by way of CERCLA. As the district court

noted: "Evaluation for conformity with the NCP at this stage of the proceedings is proper, in order to determine whether Plaintiffs are entitled to recover any of their response costs and to avoid useless trial of the case at a later juncture, should Plaintiffs fail to show the requisite consistency." *County Line Investment Co. v. Tinney*, 30 ERC 1062, 1063, 1989 WL 237380 (N.D.Okla.1989). Regardless of the extent of harm that the New Owners may have suffered, we share the view of the district court that the kind of harm alleged is non-cognizable under CERCLA, and therefore, summary judgment was appropriate.

■ Section 107 provides that a person is only liable for private party response costs to the extent that these costs were incurred "consistent with the national contingency plan." *See* 42 U.S.C. § 9607(a). Proof of response costs incurred "consistent with" the NCP is, therefore, an element of a prima facie private cost recovery action under CERCLA. *See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir.1989); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152, 1154 (9th Cir.1989); *Amland Properties Corp. v. Aluminum Co.*, 711 F.Supp. 784, 790, 794 (D. N.J.1989); *Artesian Water Co. v. New Castle County*, 659 F.Supp. 1269, 1291–92 (D.Del.1987), *aff'd*, 851 F.2d 643 (3rd Cir.1988). Because the New Owners have incurred no costs consistent with the NCP, CERCLA provides them no remedy.

---

**6.** A "remedial action" under CERCLA includes investigation and cleanup actions "consistent with a permanent remedy" for a site. 42 U.S.C. § 9601(24). It is contrasted with a "removal action" under the statute, which is generally an emergency, interim response to particular site conditions that is governed by more limited and flexible NCP requirements. *See id.* § 9601(23); 1985 NCP, 40 C.F.R. §§ 300.64, 300.65 (1988).

**7.** CERCLA "response costs" are defined generally as the costs of investigating and remedying the effects of a release or threatened release of a hazardous substance into the environment. *See* 42 U.S.C. § 9601(23), (24), (25) (1982).

**8.** In considering this issue, it is important to distinguish between claims to recover private party response costs, which may only recover "necessary costs of response incurred [by private parties] consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(B), from claims to recover government response costs subject to a lessened standard of proof under the statute. *See* 42 U.S.C. § 9607(a) ("all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan" are recoverable).

In holding that consistency with the NCP is an element of a private cost recovery claim, we recognize that there are some circumstances in which a CERCLA plaintiff may be entitled to a declaration of the defendant's liability even though the plaintiff has not yet established that all of its claimed response costs were incurred consistent with the NCP. These include cases, relied upon by the New Owners here, in which the factual record does not permit a determination of consistency with the NCP at the time the motion for summary judgment is filed, *see, e.g., United States v. Mottolo,* 695 F.Supp. 615, 620 (D.N.H.1988) (partial summary judgment may be used "to adjudicate some, but not all, issues pertaining to liability" and "may be rendered as to liability even if there is a genuine issue as to appropriate damages"); *Sunnen Prod. Co. v. Chemtech Indus., Inc.,* 658 F.Supp. 276, 278 (E.D. Mo.1987), and those in which the plaintiff seeks only a declaration of the defendant's liability for future costs incurred consistent with the NCP.[9] *See, e.g., Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 999–1000 (D.N.J.1988); *T & E Indus., Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 709 (D.N.J. 1988). In cases such as this one, however, where there is a fully developed record on which to make the NCP consistency determination, there is nothing to be gained by delaying this determination until trial. *See Amland,* 711 F.Supp. at 794; *Artesian,* 659 F.Supp. at 1292–93. Accordingly, we hold that the district court acted properly in granting summary judgment upon finding that the New Owners failed to establish a prima facie case.

▪ The New Owners next contend that the district court erred in measuring the consistency of its actions under the NCP against a strict compliance standard. Instead, the New Owners argue, the court should only have considered whether their remedial action was cost efficient, environ-

mentally sound and appropriate under the circumstances in determining whether summary judgment could be entered against them on this issue.

Most courts that have considered the showing necessary to prove consistency with the NCP have concluded either explicitly or implicitly that strict compliance with the NCP's standards and procedures is required. *See, e.g., Amland,* 711 F.Supp. at 796–97; *Versatile Metals, Inc. v. Union Corp.,* 693 F.Supp. 1563, 1579–83 (E.D.Pa. 1988); *Artesian,* 659 F.Supp. at 1291–97. These courts have based this conclusion on EPA's interpretation of the NCP consistency requirement as stated in the 1985 NCP:

> [B]ecause section 107 of CERCLA authorizes private cost recovery only for actions that are "consistent with" the NCP, EPA has an obligation, as promulgator of the NCP, to explain how private actions may be so consistent.

> · · · · ·

> In this rule ... EPA has modified [40 C.F.R.] § 300.71 to *specify in detail* what private parties must do in order to act consistently with the NCP.

> · · · ·

> To be consistent with the NCP for the purpose of cost-recovery under section 107 of CERCLA, [private party] responses must, as appropriate, address the full range of [remedial] alternatives outlined in § 300.68(f), as well as comply with all other [remedy selection] provisions of § 300.68(e) through (i). Such responses also must provide an opportunity for appropriate public comment. This public comment must be consistent with § 300.67(d)....

50 Fed.Reg. at 47, 934–35 (1985) (emphasis added); *see* 1985 NCP, 40 C.F.R. § 300.71 (1988).

This EPA language and the 1985 NCP provision it describes, 1985 NCP, 40 C.F.R. § 300.71 (1988), support the district court's

---

**9.** Early determination of a defendant's liability for as yet unproven CERCLA-cognizable costs, such as in these cases, can speed the settlement process and thus promote Congress' goal of en-

couraging private parties to undertake and fund expedited CERCLA cleanups. *See City of Philadelphia v. Stepan Chem. Co.,* 544 F.Supp. 1135, 1142–43 (E.D.Pa.1982).

reliance on a strict compliance standard to determine the consistency of the New Owners' actions under the NCP. *See Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985) (considerable deference is due to an agency's interpretation of a statute it is charged with administering); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir.1986) (applying this principle to definition of term "consistent with the national contingency plan"). In 1990, however, EPA revised the 1985 NCP and its provision for determining the consistency of private party response actions. *See* 55 Fed. Reg. 8666 (1990). In so doing, EPA declared that "[a] private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in *substantial compliance* with the applicable requirements in [a revised, more detailed list of NCP provisions potentially applicable to private party actions] and results in a CERCLA-quality cleanup." *Id.* at 8858 (to be codified at 40 C.F.R. § 300.700(c)(3)(i)) (emphasis added). In the preamble to the 1990 NCP, EPA defined a "CERCLA-quality cleanup" as a response action that satisfies the three remedy selection requirements of CERCLA section 121(b)(1). To satisfy these requirements, remedial actions must:

[1] be 'protective of human health and the environment,' utilize 'permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable,' and be 'cost-effective'[;]

[2] attain applicable and relevant and appropriate requirements (ARARs) [; and]

[3] provide for meaningful public participation.

55 Fed.Reg. at 8793. EPA also declared in the preamble that "an omission based on lack of experience with the Superfund program should not be grounds for defeating an otherwise valid cost recovery action, assuming the omission does not affect the quality of the cleanup." *Id.*

EPA's revision of the NCP throws some question on the use of a strict compliance standard to determine whether the New Owners' remedial action was "consistent with the national contingency plan" as required by CERCLA section 107. The question presented, therefore, is whether private party response costs incurred before the effective date of the 1990 NCP remain subject to review under the strict compliance standard stated in the 1985 NCP or are instead subject to review under the substantial compliance standard of the 1990 NCP. We need not decide this issue, however, because the result in this case is the same under either standard. Both the 1985 and 1990 NCPs require, at a minimum, that a private party attempting to act "consistent with the national contingency plan" provide an opportunity for public comment on its selection of the response action for the site. *See* 1990 NCP, 55 Fed.Reg. at 8858 (to be codified at 40 C.F.R. § 300.700(c)(6)); 1985 NCP, § 300.71(a)(2)(ii)(D) (1988); *See also Channel Master Satellite, Systems, Inc. v. JFD Electronics Corp.*, 748 F.Supp. 373, 389–90 (E.D.N.C.1990) (holding that failure to provide public comment on remedial actions is inconsistent with the NCP and bars recovery); *Artesian*, 659 F.Supp. at 1297 (same); *Amland*, 711 F.Supp. at 801 (same). It is undisputed that the New Owners provided no such opportunity for public comment on their response action at the Landfill.[10] Accordingly, under either the strict compliance standard employed by the district court or the substantial compliance standard stated in the 1990 NCP, the costs incurred by New Owners in closing the

---

**10.** The New Owners argue that Tinney has no standing to challenge the lack of a public comment period because he was in fact offered a chance to comment on the closure plan for the Landfill. The New Owners have the burden, however, of proving compliance with "the regulatory framework, and [Tinney], as a party sought to be held liable pursuant to that framework, will be heard as to any aspect of [the New Owners'] alleged non-compliance." *Amland,* 711 F.Supp. at 801.

Landfill were not consistent with the NCP and hence are not recoverable under CERCLA section 107 as a matter of law.

■ The New Owners also argue on appeal that the district court erred in failing to consider whether their preclosure investigatory costs were independently recoverable under CERCLA section 107, without reference to their consistency with the NCP, and without reference to the lack of comment opportunity on the proposed remedial action. Brief of Appellants at 16 (citing *Artesian Water Co. v. New Castle County,* 659 F.Supp. 1269 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988)); Reply Brief of Appellants at 5–6. Tinney responds arguing that because the New Owners did not present this argument to the district court, we should not consider it on appeal. *See, e.g., United States v. Lattauzio,* 748 F.2d 559, 561 (10th Cir.1984) (nonmovant may not assert legal theories on appeal that were not presented in the summary judgment proceeding below). We agree with Tinney that this claim comes too late for our review.

In the *Artesian* case, the severability of the investigation and cleanup costs was explicitly argued by the plaintiff to the district court. *See id.* at 1286–87, 1294 (finding investigation expenses recoverable and that the defendant County had conceded the distinction). From the inception of this case, however, the New Owners have treated their claim for the investigation and closure costs as a single allegation of injury. *See* Complaint at ¶¶ 11, 12, 15; Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment, Doc. 35 at 2 (accepting defendant's characterization of the preclosure investigation, closure, and later maintenance and monitoring as constituting a single "remedial action"). Even now, they do not purport to have presented to the district court evidence showing divisible amounts of dam-

ages. To accept the New Owners' belated attempt to salvage preclosure costs out of an adverse decision below on their unitary allegation of injury would require a remand and further evidentiary findings—proceedings which undermine the just, speedy and economical benefits of the summary judgment procedure. *See Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. at 2555.

**B. Contribution under CERCLA section 113(f)**

■ The district court also entered summary judgment against the New Owners' CERCLA contribution claim after finding that their remedial action at the Landfill was not consistent with the NCP. The New Owners challenge this holding on the ground that consistency with the NCP is not an element of a contribution claim under CERCLA section 113(f).

■ Contribution is a statutory or common law right available to those who have paid more than their equitable share of a common liability. *See* Prosser and Keeton on the Law of Torts § 50 (W. Keeton 5th ed. 1984); Restatement (Second) of Torts § 886A (1979). Contribution is available under CERCLA because of the statute's imposition of joint and several liability, regardless of fault, on persons deemed responsible under CERCLA section 107 for the release or threatened release of hazardous substances from a facility.[11] *See* 42 U.S.C. § 9607(a); *United States v. Monsanto Co.,* 858 F.2d 160, 171 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802, 810–11 (S.D. Ohio 1983).

As enacted in 1980, CERCLA made no express provision for contribution actions among parties held jointly and severally liable under its section 107 liability scheme. As a result, a potentially liable party under section 107 faced the prospect of being singled out as a defendant in a government or private cost recovery action without any

---

**11.** Liability under CERCLA may not be joint and several, however, where the harm is divisible. *See United States v. Monsanto Co.,* 858 F.2d 160, 171 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

apparent means of fairly apportioning CERCLA costs awarded against it to other persons liable for these costs under the statute. The courts responded to the inequity of this situation, and its negative implications for encouraging private parties to undertake voluntary CERCLA cleanups, by recognizing an implicit federal right to contribution under CERCLA. *See, e.g., Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1457 n. 3 (9th Cir.1986) (collecting cases); *United States v. New Castle County*, 642 F.Supp. 1258, 1268–69 (D.Del.1986); *Colorado v. ASARCO, Inc.*, 608 F.Supp. 1484, 1491–92 (D. Colo.1985). Congress ratified these efforts in 1986 by amending CERCLA section 113 to expressly recognize a right of contribution under the statute. Superfund Amendment and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, § 113(b), 100 Stat. 1613, 1647 (1986).

As amended and as relevant here, section 113 provides:

(f) *Contribution*

. . . . .

(3) *Persons Not Party to Settlement*

. . . . .

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement [with the United States or a State].

42 U.S.C. § 9613(f).

The New Owners argue that they may seek contribution from Tinney under this provision, without reference to CERCLA section 107's definition of recoverable costs and damages, because they "resolved [their] liability to ... a state" when they agreed to close the Landfill in compliance with Oklahoma's landfill closure regulations. Even assuming that this agreement

qualifies as "an administrative or judicially approved settlement" as required by § 113(f)(3)(B), we find no merit in this claim.

The New Owners contend, in effect, that § 113(f)(3)(B) creates an independent, substantive right to contribution. In so arguing, they correctly note that § 113(f)(3)(B) does not speak directly to the source of liability from which its contribution right arises. But as a matter of first impression, we think this argument fails because it requires viewing this provision in isolation. Instead, the contribution provisions of section 113 should be seen as part of the larger statutory scheme of CERCLA. So viewed, several reasons support our decision in this case that section 107(a) must be the source for any right to contribution plaintiffs may have.

First, as indicated earlier, "contribution is only available where joint liability can be imposed." *ASARCO* at 1492. The New Owners have not asserted that Tinney is jointly liable with them under any law other than CERCLA's section 107(a). Thus, in the context of this case, the only discernible "liability" referenced in section 113(f) is the common liability created by CERCLA section 107. Section 107 only imposes joint and several liability on potentially liable parties, such as Tinney and the New Owners, to the extent there are "necessary costs of response" incurred by private parties "consistent with the national contingency plan" or governmentally-incurred response costs that are "not inconsistent" with the NCP. 42 U.S.C. § 9607(a)(4)(B). If no costs qualifying under this language have been incurred by or awarded against the party seeking contribution, then there is no common liability and no right to contribution under CERCLA section 113(f). Hence, absent a showing that appellants' response costs were incurred consistent with the NCP, no right to contribution for these costs exists under CERCLA.[12]

**12.** As is the case with private cost recovery actions brought under CERCLA section 107, the point at which a party must make the necessary showing of consistency with the NCP is dependent on the development of a satisfactory factual record, which is in turn dependent on when the contribution action is filed relative to completion of the response action.

Second, we believe that the contribution paragraphs of section 113 should be read *in pari materia,* reflecting the statutory scheme to promote private action, particularly through EPA settlements with potential joint tortfeasors. *See, e.g., In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1026–27 (D. Mass.1989) (describing the provisions of section 113 as creating a "carrot and stick" assisting the EPA in obtaining settlements with joint tortfeasors). Thus, we need only look as far as the companion provision at subsection 113(f)(1) to find direct reference to a liability standard applicable here. That standard expressly links the contribution right to liability under section 9607(a). *See* 42 U.S.C. § 9613(f)(1) ("[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a)").

The scant legislative history also supports our view that the contribution right of section 113 arises in the context of CERCLA's joint and several liability scheme. The House Committee on Energy and Commerce, for example, stated that

> [Section 113(f)] also confirms a Federal right of contribution ... for persons alleged or held to be liable under section 106 or 107 of CERCLA....

> It has been held that, when joint and several liability is imposed under section 106 or 107 of the Act, a concomitant right of contribution exists under CERCLA.... [Section 113(f)] clarifies and confirms the right of a person held joint and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.

H.R.Rep. No. 99–253(I), 99th Cong., 2d Sess. 79, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2861 (citations omitted). Nothing in this language suggests that Congress intended to do anything

more than create a mechanism for apportioning CERCLA-defined costs when it added section 113(f) to the statute.

The few court decisions that have considered the pleadings or proof necessary to maintain a CERCLA contribution claim also support our holding that these claims are dependent on the establishment of a prima facie case of liability under section 107. *See, e.g., Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 15 Chem. Waste Lit.Rptr. 974 (N.D. Ill. 1988) (summary judgment granted against plaintiffs' section 113(f) contribution claim when plaintiff failed to create a genuine issue of material fact as to an element of liability under section 107(a)); *New York v. Shore Realty Corp.,* 648 F.Supp. 255, 260–63 (E.D.N.Y.1986) (holding that third-party plaintiff sufficiently alleged incurrence of response costs consistent with the NCP to withstand a challenge on this basis to its CERCLA contribution claim); *see also AS-ARCO,* 608 F.Supp. at 1492 (CERCLA defendants "have a right to contribution in the event that they are held jointly and severally liable" under CERCLA).

Finally, as noted by the court in *Artesian Water Co.,*

> Congress did not intend for CERCLA, a narrowly drawn federal remedy, to make injured parties whole or to be a general vehicle for toxic tort actions. Unless Congress sees fit to provide such a remedy, full compensation for hazardous waste harms will in most instances remain the province of state law.

659 F.Supp. at 1299–1300. There is no suggestion in the statute that Congress intended CERCLA to create a general federal right of contribution for damages and response costs that are not otherwise cognizable under the statute.[13] Accordingly, we affirm the district court's holding that consistency with the NCP is an element of a CERCLA contribution claim, as well as

---

13. In passing, we also note that it would be incongruous for federal law to bar private recovery unless there has been substantial compliance with the NCP, but then permit recovery under a contribution theory through mere compliance with less demanding state regulations.

its determination that the New Owners failed, on a fully developed record, to carry their burden of making a prima facie showing of this element on summary judgment.

## C. Unjust enrichment

 The New Owners' final cause of action is a state law claim for unjust enrichment. Under Oklahoma law, a party may only recover under this theory by showing "enrichment to another coupled with a resulting injustice." *Teel v. Public Serv. Co.*, 767 P.2d 391, 398 (Okla.1985). In order to prove the first of these elements the party seeking recovery must, 'at minimum, show either an expenditure adding to the property of another or one that "saves the other from expense or loss." *McBride v. Bridges*, 202 Okl. 508, 215 P.2d 830, 832 (1950).

 In this case, the New Owners claim that they enriched Tinney by saving him from expense or loss associated with environmental conditions at the Landfill. In particular, the New Owners contend that their investigation and closure of the Landfill benefited Tinney because these actions "extinguished" his potential liability to the state and federal government under CERCLA. Appellants' Brief at 20.[14]

Under CERCLA, Tinney, as a former owner of the D & N Landfill at the time that hazardous substances were disposed of there, is potentially liable[15] to any person, including both private parties and the state and federal governments, for CERCLA-cognizable costs incurred in response to a release or threatened release of hazard-

ous substances at or from the Landfill.[16] *See* 42 U.S.C. § 9607(a). The New Owners submitted no evidence on summary judgment, however, suggesting that any party other than they have ever incurred costs or other damages that are potentially recoverable from Tinney under CERCLA. They also failed to present evidence indicating that EPA, OSDH or any other party was contemplating a response action at the site before the New Owners volunteered to close the Landfill or that any person other than the New Owners has ever considered pursuing Tinney for CERCLA costs incurred in connection with the Landfill. The New Owners are also incorrect in asserting that their closure of the Landfill "extinguished" Tinney's potential CERCLA liability there. At most, it merely lessened the chance that this potential liability will ever be realized. Thus, the benefit the New Owners claim to have conferred on Tinney by closing the Landfill is speculative at best and cannot serve as a basis for finding "enrichment" sufficient to justify recovery from Tinney under a theory of unjust enrichment. Accordingly, we affirm the district court's grant of summary judgment against the New Owners on this claim.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

---

**14.** The New Owners apparently concede that Tinney was not liable for closure of the Landfill under Oklahoma's Solid Waste Management Act, Okla.Stat. tit. 63, §§ 2251–2265 (1981 & Supp.1988), or its implementing regulations.

**15.** This potential liability is subject to only a few, very limited defenses. *See* 42 U.S.C. § 9607(b).

**16.** Natural resource damages and the cost of certain health assessments or health effects studies may also be recoverable in some circumstances. *See* 42 U.S.C. § 9607(a)(4)(C).