UNITED STATES of America, Plaintiff,

v.

ASARCO, INC., et al., Defendant,

v.

LEADVILLE CORPORATION, et al., Third–Party Defendants.

UNITED STATES of America, Plaintiff,

v.

APACHE ENERGY AND MINERALS CO., et al., Defendants.

Civ. A. Nos. 83–C–2388, 86–C–1675.

United States District Court,
D. Colorado.

Jan. 27, 1993.

952

Jerel Ellington, Washington, DC, Susanne Bohan, and William Pharo, Denver, CO, for plaintiff.

Stanley Thompson and Emil Gimeno, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

The United States filed its complaint in this consolidated action on August 6, 1986, seeking to recover its response costs incurred and to be incurred in responding to releases or threatened releases of hazardous substances at the California Gulch Superfund Site under section 107 of CERCLA,[1] 42 U.S.C. § 9607, and to obtain injunctive relief to abate the release or threatened release of hazardous substances under section 106 of CERCLA, 42 U.S.C. § 9606. The United States asserted claims against twelve defendants, including ASARCO, Inc. (ASARCO), Res–ASARCO Joint Venture (Res–ASARCO) and Hecla Mining Company (Hecla), as current or past owners or operators of the site. ASARCO and Res–ASARCO asserted cross-claims against the other defendants, including Hecla.

On April 9, 1992, the United States lodged with the court a proposed partial consent decree to resolve its claims against Hecla. Public notice was published in the Federal Register on April 20, 1992. A thirty day public comment period was provided, which expired on May 20, 1992. Resurrection Mining Company, Asarco and Res–ASARCO submitted comments on the proposed Hecla decree. Thereafter, the United States filed a motion to enter the proposed partial consent decree. ASARCO and Res–ASARCO responded by opposing that motion. The United States and Hecla also filed a motion to add a substitute addendum to the partial consent decree defining the term "Malta Gulch Tailings." On August 12, 1992, oral argument was heard on whether the proposed partial consent decree should be entered. On January 6, 1993, the partial consent decree and addendum were entered by this court. This order sets forth my reasoning for entering the partial consent decree.

The California Gulch Superfund Site encompasses the Leadville, Colorado mining district where extensive mining, milling, and smelting of gold, silver, zinc and lead ores occurred for more than a century. The environmental legacy of these activities includes acid mine drainage from point sources; numerous tailings, slag and waste rock dumps; demolition debris from smelters and other ore processing facilities; and contaminated surface alluvial channels, sediments and soil. This litigation, spawned by these mining activities, began in December 1983.

## I. Standard for Reviewing Consent Decrees.

Public policy favors early CERCLA settlements, especially where, as here, a government agency committed to the protection of the public is involved. *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 88 (1st Cir.1990). A district court should grant deference to the agency's expertise and the parties' agreement in balancing the competing interests affected by the proposed settlement. *Id.*

The parties agree that the court's role in reviewing a judicial settlement is to "satisfy itself that the settlement is fair, reasonable ... and consistent with the purposes that CERCLA is intended to serve." *Id.* at 85 (quoting H.R.Rep. No. 253, 99th Cong., 1st Sess. 19 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3038, 3042). In addition, the settlement must be legal.

"Fairness" involves both procedural and substantive components. *Cannons*, 899 F.2d at 86. Generally, procedural fairness is measured by the candor, openness and bargaining balance in the negotiation process. *Id.* Substantive fairness "introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible." *Id.* at 87. "Settlement terms must be based upon, and roughly correlated with, some ac-

---

**1.** Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–75, *as amended* by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986).

ceptable measure of comparative fault, apportioning liability among the settling parties according to rational ... estimates of how much harm the PRP [Potentially Responsible Party] has done." *Id.* The manner in which the government has apportioned liability should be upheld whenever there is a reasonable, good faith basis for it. *Id.* at 88.

▬▬▬ Evaluation of the decree's reasonableness involves many considerations. In a cost recovery settlement, "reasonableness" "depend[s] upon whether the settlement satisfactorily compensates the public...." *Id.* at 90. Where the cost of remedial measures is uncertain at the time a decree is proposed, the decree should be approved whenever the EPA has used figures which "derive in a sensible way from a plausible interpretation of the record." *Id.* Another factor to consider is the relative strength of the parties' litigation positions. *Id.*

▬▬▬ Finally, the settlement must be consistent with the overall objectives of CERCLA. The EPA must exercise its broad settlement authority "with deference to the statute's overarching principles: accountability, the desirability of an unsullied environment, and promptness of response activities." *Id.* at 91.

## II. *Hecla Decree.*

The Hecla decree constituted a cash settlement of the United States' claims against Hecla under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all matters at the California Gulch Site, except Hecla's obligations and liability for: (1) investigation and cleanup of the Malta Gulch tailings and areas contaminated by those tailings, and (2) natural resource damages.

▬▬▬ Congress intended the judiciary to take a "broad view of proposed settlements, leaving highly technical issues and relatively petty inequities to the discourse between parties." *Cannons,* 899 F.2d at 85–

86. Applying that standard, I conclude that only one specific challenge to the Hecla partial consent decree merits in-depth discussion—whether the contribution protection provision of the partial consent decree, § VII.A, bars ASARCO and Res–ASARCO's cross-claims against Hecla. Apart from that challenge, I conclude, based on the content of the partial consent decree, the comments and responses, the motion and response, and the statements of counsel at the hearing, that the remainder of the Hecla decree is legal, fair, reasonable and consistent with the purposes that CERCLA is intended to serve.

Section VII.A of the proposed partial consent decree provides, in pertinent part that:

> "With regard to claims for contribution against Hecla brought by any third parties pursuant to sections 107(a) and 113(f)(1) of CERCLA ..., the parties herein agree and the Court hereby finds and concludes that Section 113(f)(2) of CERCLA ... shall govern." [2]

ASARCO and Res–ASARCO argue that: (1) their cross-claims against Hecla are independent cost recovery claims under § 107, and therefore are not subject to the contribution protection granted in § VII.A of the partial consent decree; and (2) an "inherent authority" settlement does not allow for contribution protection.

### A. *Whether ASARCO and Res–ASARCO's Claims are for Contribution.*

ASARCO and Res–ASARCO seek clarification of the breadth of the protection granted by § VII.A. They argue that the government has no authority to provide protection to Hecla from ASARCO and Res–ASARCO's independent cross-claims for costs they have incurred in performing remedial actions, including the Yak Tunnel surge pond and water treatment plant, because their cross-claims are not contribution claims. ASARCO and Res–ASARCO assert that the:

**2.** Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), provides, in pertinent part, that:
"A person who has resolved its liability to the United States ... in a judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the set-

tlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of others by the amount of the settlement."

"government wholly fails to honor the distinction between cost recovery claims and contribution claims.... Whereas the former are independent claims a party brings to recover its own costs, a contribution claim instead is derivative; thus a party would bring a cost recovery action to recoup its own costs, but would bring a contribution claim to pass off a portion of liability imposed on it for someone else's costs."

(Response at 2–3).

The government responds that ASARCO and Res–ASARCO misconstrue CERCLA. It contends that ASARCO's and Res–ASARCO's cross-claims against Hecla under § 107 are indeed for contribution.

Courts that have considered the issue are split on whether one jointly liable party can assert an independent cost recovery claim against another jointly liable party and thereby negate the latter party's contribution protection. *Compare United States v. Hardage*, 733 F.Supp. 1424 (W.D.Okla.1989) (reporter's transcript) (recognizing a "marked distinction" between a contribution claim and a response cost claim); *with Transtech Industries, Inc. v. A & Z Septic Clean, et al.*, 798 F.Supp. 1079 (D.N.J.1992) (claim against one liable party by another liable party who incurred response costs is a claim for contribution) and *Dravo Corp. v. Zuber*, 804 F.Supp. 1182, 1187 (D.Neb.1992) (response cost claim indistinguishable from claim for contribution).[3]

■■■■ "Contribution is a statutory or common law right available to those who have paid more than their equitable share of a common liability." *County Line Investment Co. v. Tinney*, 933 F.2d 1508, 1515 (10th Cir.1991). Contribution is available because of CERCLA's "imposition of joint and several liability, regardless of fault, on persons deemed responsible under CERCLA section 107 for the release or threatened release of hazardous substances from a facility." *Id.* Congress amended CERCLA by adding section 113(f) which expressly recognizes a right of contribution. *Id.* at 1516. Section 113(f), however, does not create the right of contribution—rather the source of a contribution claim is section 107(a). *Id.* Under CERCLA's scheme, section 107 governs liability, while section 113(f) creates a mechanism for apportioning that liability among responsible parties. *Id.* at 1517; *Transtech Industries*, at 1085.

■■■■ I conclude that where parties are jointly and severally liable under CERCLA, response costs can only be shifted by one party to another party by way of contribution. Where a liable party has incurred response costs for which it is jointly liable, and then attempts to exercise its statutory right to recover another party's share of that common liability, the claim is one for contribution. *See County Line*, 933 F.2d at 1515–16; *Transtech Industries*, at 1086; *Dravo Corp.*, 804 F.Supp. at 1187. Absent a provision to the contrary in CERCLA, the fact that ASARCO and Res–ASARCO have incurred response costs does not alter the substance of their claims so as to enable them to void the contribution protection provided to Hecla by CERCLA § 113(f)(2).[4]

■■■■ This interpretation is consistent with Congress' intent that Superfund sites be cleaned up expeditiously and fairly. Section 113(f)(2) has been aptly described as creating a carrot and stick.

"The carrot the EPA can offer potential settlors is that they need no longer fear that a later contribution action by a non-

---

**3.** A number of courts have held that when one liable party sues another to recover an equitable share of its response costs under CERCLA, the action is one for contribution. *See In re Dant & Russell, Inc.*, 951 F.2d 246, 248–49 (9th Cir. 1991); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989); and *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 88–89 (3d Cir.1988), cert. denied, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). As ASARCO and Res–ASARCO point out, these cases are of limited persuasive value because the courts did not consider whether there is a distinction, in this setting, between contribution claims and cost recovery claims.

**4.** On the other hand, if two parties are not jointly and severally liable because the harm is divisible, one party could assert an independent cost recovery claim against the other because there is no common liability and therefore no right of contribution. *See County Line*, 933 F.2d at 1515 n. 11, 1516.

settlor will compel them to pay still more money to extinguish their liability.... As for the stick, if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make good the difference." *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1027 (D.Mass.1989). The possibility of disproportionate liability created by CERCLA "promotes early settlements, and deters litigation for litigation's sake, and is an integral part of the statutory plan." *Cannons,* 899 F.2d at 92. The wisdom of Congress in providing this incentive to settle is illustrated by the instant case, now in its tenth year of costly and time consuming litigation.

The interpretation suggested by ASARCO and Res–ASARCO would severely undermine the effectiveness of § 113(f)(2). As a result, there would be far less incentive for Hecla and other defendants to expediently settle the claims against them. In the real world created by CERCLA, litigation expenses have consumed inordinately large sums that could far better have been applied to cleanup. Obviously each day of delay adds to the "transaction" costs of litigation.

Unless a party in Hecla's situation can receive reasonable assurance that its settlement payment will buy a peace with finality, it may see little advantage in early settlement. Absent the contribution claim protection provided by Congress, one recalcitrant party might be able to hinder and delay indefinitely the settlement efforts of other parties. While the contribution protection rule may sometimes result in disproportionate liability, the possibility of such results is speculative, whereas the manifold advantages of early, final, individual settlements are highly probable.

B. *Inherent Authority Settlements and Contribution Protection.*

ASARCO and Res–ASARCO do not challenge the inherent authority of the govern-ment to enter into cash-out settlements. *See United States v. Hercules, Inc.,* 961 F.2d 796 (8th Cir.1992). However, they do argue that because cash-out settlements are not specifically mentioned in § 122 of CERCLA, 42 U.S.C. § 9622, the government cannot extend section 113 contribution protection to Hecla.

CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), provides in clear, plain language that: "[a] person who has resolved its liability to the United States ... in a judicially approved settlement shall not be liable for claims for contribution...."

When a party enters into a cash settlement with the government of a section 107 claim and that settlement is approved by a court, that party clearly "has resolved its liability to the United States ... in a judicially approved settlement." Therefore, I conclude that in an inherent authority settlement the government can extend contribution protection to the settling party.[5]

Every party is free to settle early and seek contribution claim protection, or to waive that immunity by delaying settlement. While it might be argued in other circumstances that § 113(f)(2) encourages a "race to settlement," any contention that Hecla has here engaged in such a race and thereby gained unfair advantage is belied by the rude fact that this case has been in litigation over nine years. If this was a race, it was a marathon of snails.

Accordingly, IT IS ORDERED that:
(1) The government's motion to enter the partial consent decree with Hecla is granted nunc pro tunc January 6, 1993; and
(2) The government's and Hecla's motion to enter the substitute addendum to the partial consent decree with Hecla is granted nunc pro tunc January 6, 1993.

---

5. ASARCO and Res–ASARCO further contend that even if their counterclaims are classified as "contribution" claims, section 308 of CERCLA, 42 U.S.C. § 9657, renders that portion of the partial consent decree invalid.

Section 308 of CERCLA only applies to administrative settlements. Here the partial consent decree is a part of a judicially approved settlement, therefore section 308 is not applicable. Moreover, ASARCO and Res–Asarco have cited no authority in support of their contention that the instant partial consent decree results in a deprivation of a constitutionally protected interest. *Cannons,* 899 F.2d at 92, n. 6.