**ALCAN–TOYO AMERICA, INC., Plaintiff,**

**v.**

**NORTHERN ILLINOIS GAS COMPANY and Commonwealth Edison Company, Defendants.**

**No. 92 C 7142.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 7, 1995.

Lawrence A. Salibra, II, Alcan Aluminum Corporation, Cleveland, OH, Neil S. Ament, Wheeling, IL, for Alcan–Toyo American, Inc.

Susan M. Franzetti, Mary Beth Cyze, Roy M. Harsch, Hilary F. Herbst, Gardner, Carton & Douglas, Maureen M. Crough, Sidley & Austin, Robert Martin Olian, Susan Vavra Harris, Sidley & Austin, Chicago, IL, for Northern Illinois Gas Co. and Commonwealth Edison Co.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Alcan–Toyo America, Inc. ("Alcan–Toyo") seeks recovery of response costs from defendants, Northern Illinois Gas Company and Commonwealth Edison Company ("the Utilities") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. (1995). For the reasons stated below, Alcan–Toyo's request is granted in part and denied in part.

### Background

Alcan–Toyo brought suit against the Utilities under Section 107(a) of CERCLA to recover past costs incurred in response to a threatened release of hazardous materials at a site Alcan–Toyo owns. In addition, Alcan–Toyo sought a declaration of the Utilities' liability for future costs incurred in response to threatened releases. All parties stipulated to liability under CERCLA.

In a Memorandum Opinion and Order issued on March 24, 1995, this court held that the Utilities were responsible for ninety percent of future response costs, with Alcan–Toyo responsible for the remaining ten percent.[1] With this opinion I address the response costs incurred by Alcan–Toyo prior to this litigation. These include the costs of an investigation performed by the environmental consulting firm Dames & Moore and the investigation and subsequent excavation of contaminated soil performed by environmental consultants O'Brien & Gere ("OBG"). The Utilities admit that as a responsible party they are liable for the legally recoverable costs incurred by Alcan–Toyo, but dispute whether the costs at issue here are legally recoverable.

### The Appropriate Legal Standard

Under § 107 of CERCLA, responsible parties are liable for "necessary costs of response incurred ... consistent with the national contingency plan." 42 U.S.C. § 9607(a). Thus, in order to recover the costs for the work performed by Dames & Moore and OBG, Alcan–Toyo must establish that their work was (1) necessary and (2) consistent with the national contingency plan ("NCP"). See, e.g., County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1512 (10th Cir.1991) (holding that proof that costs were incurred consistent with the NCP is a prima facie element of plaintiff's case to recover response costs); G.J. Leasing Co. v. Union Elec. Co.,

---

1. At that time, the parties specifically chose to exclude the issue of liability for past costs from the court's decision. The equitable factors applicable to the apportionment of liability for past costs do not differ from those applicable to future costs. Therefore the Utilities are only liable for 90% of the past costs for which I find them responsible.

854 F.Supp. 539, 561 (S.D.Ill.1994), *aff'd,* 54 F.3d 379 (7th Cir.1995) (requiring plaintiff to "prove affirmatively that its response costs were both necessary and consistent with the NCP in order to recover under CERCLA").

The National Contingency Plan, promulgated by the United States Environmental Protection Agency ("EPA"), was revised in 1985 (the "1985 NCP") and again in 1990 (the "1990 NCP"). The 1990 NCP became effective on April 9, 1990. *See* 55 Fed.Reg. 8666 (1990) (Preamble to 1990 NCP). The 1990 NCP reduced the burden on the party seeking recovery for its response costs by requiring only "substantial compliance" with the NCP in order for costs to be "consistent with the NCP." *See* 40 C.F.R. § 300.700(c)(3)(i) (1994). Thus "immaterial or insubstantial deviations from the [NCP]" will not render response costs not "consistent with the NCP." 40 C.F.R. § 300.700(c)(4). Previously, under the 1985 NCP, a party seeking to recover costs had to comply strictly with the relevant provisions of the NCP. *See Gussin Enterprises, Inc. v. Rockola,* No. 89 C 4742, 1993 WL 114643 at *4 (N.D.Ill. April 13, 1993). Both versions of the NCP are potentially applicable to the costs at issue here because the work was begun in 1989 and completed after 1990.

### Dames & Moore's Work

■ The work performed by Dames & Moore was begun in 1989 and completed in June of 1990. The bulk of the work performed by Dames & Moore was performed prior to April 9, 1990, the date on which the 1990 NCP took effect. According to OBG's summary of the work, Dames & Moore conducted five stages of sampling. Three of these were completed by January of 1990; the fourth and fifth phases were conducted between February and May of 1990.[2] The Dames & Moore invoices submitted by Alcan–Toyo do not specify the activities being billed, but over $70,000 of the almost $95,000 total bill was for periods prior to March 31, 1990. The 1985 NCP is accordingly applicable to the work performed by Dames & Moore. *See G.J. Leasing Co., supra,* 854 F.Supp. at 563 ("[A] response cost is recoverable under CERCLA only if it is consistent with the NCP in effect at the time the response costs were incurred.").

Alcan–Toyo urges the court to apply the 1990 NCP retroactively, because the actual clean-up did not commence until after April of 1990. The policy considerations behind the 1990 NCP change to only substantial compliance, however, do not dictate a retroactive application. In moving to a lower standard, the EPA wanted to encourage more private parties to undertake voluntary cleanup activities. By requiring only substantial, rather than strict, compliance, the EPA hoped to make it easier for private parties to recover the costs of their efforts, and therefore more likely that they would clean up contaminated sites themselves. *See* 55 Fed.Reg. at 8794 ("EPA also believes that it is an important public policy to encourage private parties to voluntarily clean up sites, and to remove unnecessary obstacles to their recovery of costs."). Parties who had already begun cleanup attempts, however, had no need for the added encouragement provided by the 1990 NCP.

■ Under the 1985 NCP, Alcan–Toyo must have "strictly" complied with the plan in order to obtain response cost recovery. *Gussin Enterprises, supra,* 1993 WL 114643 at *4. In order to determine compliance with the NCP, I must characterize the work performed and ascertain which section of the NCP applies. The Utilities contend that because the NCP definition of removal includes site evaluation, Dames & Moore's evaluation should be judged according to the section governing removal. However, a preliminary assessment and site inspection is a separate phase of a response action under 40 C.F.R. § 300.64 (1986). Under this provision, Alcan–Toyo was to evaluate whether a removal was necessary, based on the potential threat to public health and the magnitude of that threat. The section lists several steps the party "may" follow in making that assessment, but has few procedural requirements. I find that Dames & Moore adequately assessed the nature of the problem and therefore strictly complied with the 1985 NCP.

---

**2.** Alcan–Toyo provides no further details of exactly when the work was performed.

In addition to establishing that the work performed by Dames & Moore was consistent with the NCP, Alcan–Toyo must also prove that it was necessary. An investigation into the extent of the hazardous waste problem was surely necessary and the Utilities offer little argument to the contrary. Because the costs incurred for the Dames & Moore evaluation were consistent with the NCP and necessary, the Utilities must pay 90% of them.

### OBG's work

The parties do not dispute that the 1990 plan applies to OBG's work, because it was not begun until July of 1990. Therefore, OBG's work "will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with applicable requirements in paragraphs (c)(5) and (6) of this section." 40 C.F.R. § 300.700(c)(3)(i) (1990).

■ The parties do not dispute that the work performed by OBG was a removal action. 40 C.F.R. § 300.700(c)(6) provides that "[p]rivate parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action." This section specifically cites § 300.415(m), the provision addressing community relations during removal actions. That section discusses the actions to be taken by the "spokesperson" for the "lead agency." Alcan–Toyo argues, therefore, that this section could not apply to it. However, subsection (c)(8) of section 300.700 explicitly states that "any action to be taken by the lead agency listed in paragraphs (c)(5) through (c)(7) may be taken by the person carrying out the response action." 40 C.F.R. § 300.700(c)(8); see also 55 Fed.Reg. at 8795 ("In a private party response action, the private party may perform most of the functions of a lead agency ...; there is no support agency in a private party cleanup action."). Alcan–Toyo itself must therefore "inform the community of actions taken, re-

spond to inquiries, and provide information concerning the release [and], at a minimum, [notify] immediately affected citizens." 40 C.F.R. § 300.415(m)(1). Alcan–Toyo admits that it has not done so.[3]

■ The Utilities argue that the failure to seek public comment should itself render OBG's work not in "substantial compliance." Several courts have held that the failure to seek public comment alone may render a response action inconsistent with the NCP. See, e.g., County Line, supra, 933 F.2d at 1514–15; Gussin Enterprises, supra, 1993 WL 114643 at *5 (granting summary judgment to defendant in CERCLA recovery action because plaintiff sought no public comment and therefore was not in substantial compliance with the 1990 NCP). As Alcan–Toyo correctly points out, these courts both addressed the public comment requirement in the context of a remedial action.[4] I find the reasoning persuasive and applicable, however, to removal actions also.

Public comment is clearly required under 40 C.F.R. § 300.415(m). This section, excluding a few inapplicable provisions, is listed as a requirement with which parties must substantially comply in order to recover their costs. See 40 C.F.R. § 300.700(c)(5)(vi). Under the provision rendering the section governing removal actions necessary for substantial compliance, therefore, the public comment requirement for removal actions is prescribed for cost recovery actions. The EPA, however, has created an additional separate section, explicitly reiterating the requirement that to be consistent with the NCP the party must seek public comment. The fact that the NCP lists the public comment requirement in two separate subsections of the requirements for consistency with the NCP indicates that a failure to fulfill the requirement is not an "immaterial or insubstantial deviation[ ]" from the NCP's requirements. 40 C.F.R. § 300.700(c)(4). See also 55 Fed.Reg. at 8795 ("Public partic-

3. In defendants' request for admissions, Alcan–Toyo admits that it "did not seek public comment concerning its decision to excavate." Additionally, Alcan–Toyo admits that it "did not inform the community around the Site that the excavation was planned."

4. A "remedial" action is a more permanent solution to a contaminated site and is therefore subject to more stringent procedural requirements than a removal action.

ipation is an important component of a CERCLA-quality cleanup, and of consistency with the NCP.... Thus, EPA has decided that providing public participation opportunities should be a condition for cost recovery under CERCLA.").

Alcan–Toyo may not claim it substantially complied with the NCP when it completely failed to even recognize one of its important requirements. *Cf.* 55 Fed.Reg. at 8793 (in discussing the decision to require only "substantial compliance," noting that, for example, failure "to provide a public hearing should [not] serve to defeat a cost recovery action if the public was afforded an ample opportunity for comment"). Here Alcan–Toyo did nothing to obtain public input and therefore has not substantially complied with the NCP.[5] Because the response action performed by OBG was not consistent with the NCP, Alcan–Toyo may not recover the cost of OBG's work. *See, e.g., Gussin Enterprises, supra,* 1993 WL 114643 at *4 (granting summary judgment for defendants where plaintiff's response costs were not incurred consistent with the NCP); *Channel Master Satellite Systems, Inc. v. JFD Electronics Corp.,* 748 F.Supp. 373 (E.D.N.C.1990) (denying response costs when plaintiff failed to prove they were incurred consistent with the NCP).

### *Conclusion*

For the reasons set forth above, Alcan–Toyo's claim for the cost of work performed by Dames & Moore is granted, with the Utilities jointly liable for 90% of that cost. Alcan–Toyo's claim for the cost of OBG is denied in full.

The Utilities, however, are entitled to more detail than the information currently provided on the Dames & Moore invoices. Alcan–Toyo is ordered to produce more complete documentation of these costs to the Utilities within thirty (30) days. If the Utilities still

require more detail before paying Alcan–Toyo, the court will address the issue at that time.

---

5. The Utilities argue that Alcan–Toyo failed to substantially comply with other requirements. They argue that Alcan–Toyo has not adequately documented that OBG followed appropriate worker safety and health procedures, that discussion of potential removal alternatives is inadequate, and that Alcan–Toyo completed its removal action before notifying the Utilities that they were potentially responsible. Because I have decided that the lack of public participation itself renders Alcan–Toyo not in substantial compliance, I need not address how these alleged flaws would affect Alcan–Toyo's cost recovery action. For the same reason, I need not address whether OBG's work was necessary.