**AKZO COATINGS OF AMERICA, INC., et al., Plaintiffs,**

v.

**AMERICAN RENOVATING, et al., Defendants.**

No. 92–CV–74105–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 20, 1993.

Keith J. Lerminiaux, Timothy H. Howlett, Gregory J. Parry, and Kyle M.H. Jones, Detroit, MI, for plaintiffs; and William C. Roush, Bloomfield Hills, MI, for all plaintiffs except Akzo and Chrysler.

Daniel P. King, Farmington Hills, MI, for Michigan Chrome, Commercial Steel, Julius Novik and Argo Paint.

John J. Lynch, Birmingham, MI, for Sherwin Williams.

Deborah H. Bornstein, Chicago, IL and Hugh Thomas, Detroit, MI, for Desoto.

Barry King, Troy, MI, for Emco Chemical.

Gordon S. Gold, Southfield, MI, for Michlin Chemical.

Daniel J. McCarthy, Troy, MI, for American Renovating.

Susan J. Sadler and Amy Bateson, Bloomfield Hills, MI, for BASF Corp.

Michael S. Leib, Southfield, MI, for Irving Rubin.

Steven D. Weyhing, Lansing, MI and Dennis M. Day, Detroit, MI, for PPG Industries, Inc.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

Plaintiffs (referred to collectively as "Akzo") filed suit against defendants DeSoto, BASF, Argo, Novik, Commercial Steel, and numerous other entities, on July 17, 1992. Akzo seeks to recover for the defendants' share of past and future response costs incurred and to be incurred by plaintiffs, relating to the Rose Township Site ("Site"). Defendant DeSoto filed a Motion for Summary Judgment on June 1, 1993. Defendant BASF sought to join in DeSoto's motion on June 30, 1993, and filed its own motion and brief in support of summary judgment. Defendants Argo and Novik filed a Motion for Joinder to DeSoto's Motion for Summary Judgment on July 19, 1993, relying exclusively on DeSoto's motion and brief. Defendant Commercial Steel filed a Motion for Joinder to DeSoto's Motion for Summary Judgment on August 9, 1993, also seeking costs and attorney fees. This Court permitted the various defendants to join in DeSoto's Motion for Summary Judgment by Order dated September 17, 1993.

### I. FACTS

In June 1987, the United States Environmental Protection Agency (EPA) sent plaintiffs and defendants "Special Notice Letters." These letters informed the recipients that they were designated "potentially responsible parties" ("PRPs"), and thereby potentially strictly, jointly and severally liable for all response costs to investigate and cleanup the Site. The Site, which was contaminated from the disposal of industrial waste, is the 110 acre Rose Township "Superfund" Site, located in Oakland County, Michigan.

Under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (West Supp.1993), the United States may sue PRPs for the cost of treating and disposing of hazardous substances at a site. After settlement negotiations, the Akzo plaintiffs entered into a consent decree with the U.S. on July 18, 1989. *United States v. Akzo Coatings,* 949 F.2d 1409 (6th Cir.1992).[1] The Consent Decree obligated plaintiffs to pay over $10 million to fund performance of the remedial design and remedial action ("RD/RA") for the State. In addition, the plaintiffs were required to pay future government oversight costs, and to deposit $500,000 in a trust fund for use by the government to achieve "Phase II" cleanup after plaintiffs accomplished "Phase I" cleanup. The defendants in the present case were not part of this settlement.

The United States filed suit in this Court against defendants, the nonsettling PRPs, in May 1989. The parties eventually settled, and the Court entered a consent decree in September 1992. *United States v. American Renovating Co., et al.,* No. 89–CV–71712 (E.D.Mich. Sept. 3, 1992). The consent decree requires the settling defendants to "pay $275,000 in satisfaction of the United States' response costs at the Rose Township Facility, and the United States agrees to enter a stipulation of dismissal of its claim against the settling defendants for recovery of the United States' future response costs at the Facility." 57 Fed.Reg. 20712 (May 14, 1992). The agreement also provides that defendants will receive full "contribution protection" for "matters addressed in this settlement." (Stipulation and Order of Settlement, p. 7).

Plaintiffs filed suit against defendants on July 17, 1992 to recover their share of past and future response costs incurred and to be incurred by plaintiffs in connection with the consent decree they entered with the United States. On December 15, 1992, Akzo filed a third amended complaint, seeking contribution under § 113(f)(1) of CERCLA, private cost recovery under § 107(a)(4)(B) of CERC-

LA, and damages for common law nuisance. Akzo alleges that the defendants are liable for future oversight costs and past and future response costs which Akzo has or will incur under their consent decree.

## II. LEGAL STANDARD

■■■ Pursuant to Fed.R.Civ.Proc. 56(c) a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. *Anderson, supra.* The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness. *Matsushita, supra.*

## III. ANALYSIS

### A. Contribution and Private Cost Recovery

At conflict in this case are the liability provision of CERCLA, 42 U.S.C. § 9607(a)(4)(B), and the contribution protection provision, § 9613(f)(2). Section

---

1. The State of Michigan appealed this Court's entry of the consent decree, and the Sixth Circuit

affirmed the entry.

9607(a)(4) provides that any PRP shall be liable for:

(A) all *costs of removal or remedial action incurred by the United States* Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary *costs of response incurred by any other person* consistent with the national contingency plan; ....
(emphasis added).

Section 9613(f)(2) provides;

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding *matters addressed in the settlement*.... (emphasis added).

Section VI of the Consent Decree entered between defendants and the United States is entitled "Contribution," and provides:

By entering into and carrying out the terms of this Stipulation, the Parties shall be entitled to contribution protection to the extent provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for *matters addressed in this settlement.* (emphasis added).

Defendants take the position that Akzo seeks to recover the same response costs which were the subject of defendants' settlement with the Government. If this is the case, then such action would be barred by CERCLA's contribution protection provision. One of defendants' arguments is that the Akzo/Government Settlement was "addressed" in the settlement between defendants and the United States. Indeed, at the second page of the settlement, the Akzo consent decree is referred to with a case citation. Defendants also reason that all liability, and therefore all response costs, originate from the United States. Therefore, when Akzo entered into its consent decree for future costs with the United States, Akzo assumed the responsibility of paying those costs, but the costs were the government's to control. The crux of defendant's argument is that Akzo is seeking contribution for response costs incurred by the government, but paid for by Akzo.

Akzo rebuts defendants' position by asserting that while defendants settled with the United States for its response costs relating to the Site, defendants did not contribute to the response costs privately incurred by Akzo. In other words, the government did not merely apportion its response costs among Akzo and the defendants, and then settle each portion with the respective entities. Instead, Akzo distinguishes between government response costs and private response costs. Akzo purports to be suing defendants for the private response costs it has or will incur, as well as the future oversight costs Akzo will incur under its consent decree, plus nuisance damages.

 The policy behind the contribution protection provisions of CERCLA is to encourage early settlement with the government. The provisions give the federal government the tools necessary for a prompt and effective response to the problems resulting from hazardous waste disposal. *U.S. v. Union Gas Co.,* 743 F.Supp. 1144, 1152–53 (E.D.Pa.1990). The settlor need not fear that a later contribution action by a non-settlor will compel them to pay *additional* money to extinguish their liability. However, the protection only extends to matters addressed in the settlement. The policy behind CERCLA is to make the responsible parties pay for the cleanup of hazardous waste sites. *Transtech Industries, Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1089 (D.N.J.1992). If defendants were permitted to settle with the government for part of the cleanup costs of a site, and then become immune from suit for contribution by private entities who paid for *other* cleanup costs, it would defeat the policy of CERCLA. Settling PRPs should not be made to pay twice for the same cleanups, but they also should not get a windfall because they settled. *Transtech,* 798 F.Supp. at 1090.

 One court has listed factors to be considered in determining the subject matter covered by the settlement. Such factors include the particular hazardous substance at issue in the settlement, the location or site in question, the time frame covered by the settlement, and the cost of the cleanup. *Union Gas Co.,* 743 F.Supp. at 1154.

This Court begins its analysis by looking to the language of the settlement entered into by defendants, keeping in mind the factors listed in *Union Gas Co.* The stipulation asserts that it was entered into "to resolve Plaintiff's [United States] claims for reimbursement of response costs incurred and to be incurred by the United States as alleged in the Complaint." (Stipulation at pp. 1–2, repeated in the "Objective" at p. 5). Furthermore, "response costs" is a term defined in the stipulation as "any cost . . . incurred or to be incurred by the United States in connection with any response action relating to any release or threatened release at or from the Rose Township site as alleged in the Complaint." (Stipulation at p. 4).

The settlement refers to the government's complaint, so this Court must next examine that document. The complaint filed by the United States against the defendants sought "to recover costs incurred for response, remedial and investigative activities undertaken as a result of the release or threatened release of hazardous substances at . . . the 'Rose Township site.'" (Complaint p. 1). These costs included the Remedial Investigation and Feasibility Study (RI/FS) completed by the U.S. EPA in June 1987, and response measures undertaken by the U.S. EPA beginning in February 1984. (Complaint p. 5). The response costs up to the date of the complaint were estimated to be $1.7 million. The settlement entered between the parties in September 1992 required the settling defendants to pay $275,000, which covered response costs incurred by the United States through the date of the settlement.

The consent decree entered between the United States and the Akzo plaintiffs addresses the RI/FS conducted by the government and completed in June 1987. The costs associated with this report were also addressed in the settlement between the United States and the defendants in the present case. The Akzo consent decree also addresses the final Remedial Action Plan ("RAP") submitted by Akzo, a matter which is not included in the subject matter addressed by the settlement between the United States and the defendants.

Akzo cites the Court to *Boeing Co., et al. v. Northwest Steel, et al.,* 1991 U.S.Dist. Lexis 14786 (W.D.Wash.). That opinion is a Court Minute Opinion, written in very summary fashion, but nonetheless discusses an issue much like the one before this Court. The *Boeing* Court states that the third-party defendants settled with the United States for the government's own past costs. The United States did not incur unreimbursed costs for the Phase I and Phase II cleanups, as they were performed by the settling third-party plaintiffs, pursuant to a consent decree entered with the United States. The third-party plaintiffs then sued the third-party defendants for contribution to the Phase I and Phase II cleanup costs. The Court held that, "while the third-party defendants may have paid their fair share of the United States' costs, they have not paid their fair share of the total cleanup costs."

■ This Court agrees with Akzo, and with the *Boeing* Court, that the reference to government response costs in the settlement agreement between defendants and the United States does not encompass all cleanup costs related to the Rose Township Site. This fact is evident when the Court considers that plaintiffs settled with the government for over $10 million, while defendants settled $1.7 million in response costs for $275,000. The government may go after any or all PRPs, who are jointly and severally liable for the cleanup costs of a hazardous waste site. In this case, the United States went after the Akzo plaintiffs for a portion of the cleanup costs, and then sued the defendants for a portion of the cleanup costs. These two portions overlap somewhat, as they both appear to cover the cost to the government to conduct the RI/FS. Defendants are therefore protected from an action for contribution for these overlapping expenses. However, Akzo was also required to submit a Remedial Action Plan, and then pay for its implementation. This expense was incurred by the Akzo plaintiffs, and therefore is not a government response cost. As a result, the defendants are not immune from Akzo's contribution suit for these costs. The mere fact that the Akzo consent decree was mentioned in defendants' settlement does not change this result. CERCLA makes the distinction between pri-

vate and governmental response costs, and that distinction applies to the facts of this case.

All of the cases relied on by the plaintiffs and defendants differ factually from the case presently before the Court. *Burlington Northern Rail v. Time Oil Co.*, 738 F.Supp. 1339 (W.D.Wash.1990) applied CERCLA prior to the enactment of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). *Comerica Bank–Detroit v. Allen Indus., Inc.*, 769 F.Supp. 1408 (E.D.Mich.1991) involved a private contract giving contribution protection rather than CERCLA § 9613(f)(2). Furthermore, the consent decree in that case used language which was much more far reaching that the "subject matter addressed" language of § 9613(f)(2). *Transtech Industries* is the case most on all fours with this case. In *Transtech*, the Court did not expand the language in the consent decree, "recovery of all response costs that have been incurred by the United States . . .", to absolve defendants of all response costs, including remedial work done by the private plaintiffs. *Id.* at 1088. This Court likewise declines to expand the "subject matter addressed" by the settlement agreement entered by defendants.

In light of the foregoing discussion and analysis, this Court holds that defendants' Motion for Summary Judgment on plaintiffs' claims of contribution and private cost recovery is DENIED.

## B. Nuisance

Congress did not intend for CERCLA to preempt state law remedies, such as nuisance. *U.S. v. Akzo Coatings of America*, 949 F.2d 1409, 1455 (6th Cir.1991). Defendants argue that plaintiffs are barred from bringing suit under a common law nuisance theory because the same matter was addressed in the settlement between defendants and the United States. If that proves to be the case, then plaintiffs are correct in their conclusion.

Plaintiffs' Count VII is based on public nuisance, for the role defendants played in transporting or arranging for the disposal of hazardous wastes at the Site. The pecuniary damages resulting from the alleged nuisance include government oversight costs and any past and future costs to abate the nuisance. (Third Amended Complaint, ¶¶ 62, 63). Plaintiffs are stating an alternative theory for reimbursement of costs they incurred with respect to the Site. Because private costs were not covered by the consent decree entered by defendant, summary judgment will not be granted as to plaintiffs' public nuisance claim. However, to the extent plaintiffs seek to recover government response costs under a nuisance theory, they will be barred by § 9613(f)(2).

Defendants next argue that plaintiffs have failed to state a valid cause of action for nuisance. Plaintiffs must allege a statutory violation and show that they sustained damages distinct and different from the injury suffered by the public generally. *Ken Cowden Chevrolet, Inc. v. Corts*, 112 Mich.App. 570, 574, 316 N.W.2d 259 (1982). Here, plaintiffs do allege a statutory violation by defendants, specifically that they arranged for the disposal or treatment of hazardous wastes at the Site. Plaintiffs also suffered pecuniary damages not faced by the public generally in that they continue to pay DeSoto's alleged share of response costs to remediate the Site. Plaintiffs have thus stated a cause of action for public nuisance, and defendants' Motion for Summary Judgment is DENIED.

Akzo and Commercial Steel's Motions for Rule 11 Sanctions, costs and attorneys fees are also DENIED.

So ordered.